UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA SUE WHEELER,

                            Plaintiff,

                                                                              Case # 16-CV-6348-FPG

v.

                                                                              DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                            Defendant.

Rebecca Sue Wheeler ("Wheeler" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

On February 21, 2013, Wheeler applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 161-74. She alleged that she had been disabled since April 1, 2011 due to a shredded meniscus in the right knee, diabetes, back and knee problems, knee arthritis,

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]     References to "Tr." are to the administrative record in this matter.

and anxiety. Tr. 210. On December 11, 2014, Wheeler and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Brian Kane ("the ALJ"). Tr. 35-62. On January 28, 2015, the ALJ issued a decision finding that Wheeler was not disabled within the meaning of the Act. Tr. 19-29. On March 31 2016, the Appeals Council denied Wheeler's request for review. Tr. 1-6. Thereafter, Wheeler commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ's decision analyzed Wheeler's claim for benefits under the process described above. At step one, the ALJ found that Wheeler had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ found that Wheeler has an s/p right knee meniscectomy, which constitutes a severe impairment. Tr. 21-23. At step three, the ALJ found that this impairment did not meet or medically equal an impairment in the Listings. Tr. 23-24.

Next, the ALJ determined that Wheeler retained the RFC to perform light work[3] with additional limitations. Tr. 24-27. Specifically, the ALJ found that Wheeler can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can sit up to six hours and stand and walk for four to six hours in an eight-hour workday; can occasionally use right foot controls and frequently use left foot controls; can frequently use bilateral hand controls, reach overhead and in other directions, handle, finger, and feel; and cannot climb ladders or scaffolds, kneel, crouch, or crawl, but can occasionally climb ramps and stairs, balance, and stoop. Tr. 24.

At step four, the ALJ found that Wheeler cannot perform her past relevant work. Tr. 27. At step five, the ALJ relied on the VE's testimony and found that Wheeler can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 28-29. Specifically, the VE testified that Wheeler could work as an addresser, surveillance system monitor, and document preparer. Tr. 28. Accordingly, the ALJ concluded that Wheeler was not "disabled" under the Act. Tr. 29.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

**II.     Analysis**

Wheeler argues that remand is required because the ALJ afforded "significant weight" to the opinion of her treating physician Bradley K. Peck, M.D. but failed to adopt all of his recommended limitations into the RFC assessment or explain why he rejected certain limitations.[4] ECF No. 11-, at 17-20.  Specifically, Wheeler asserts that the ALJ improperly rejected Dr. Peck's opinion that she requires a job that allows her to alternate positions between sitting and standing. *Id.*  The Court agrees.

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527); 20 C.F.R. § 416.927.  Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).  While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

---

[4]     Wheeler advances another argument that she believes warrants reversal of the Commissioner's decision. ECF No. 11-1 at 21-23.  However, the Court will not address that argument because it disposes of this matter based on the ALJ's improper evaluation of Dr. Peck's opinion.

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In general, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). However, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Accordingly, when an ALJ adopts only portions of a medical opinion he or she must explain why the remaining portions were rejected. *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes*, 2015 WL 1524417 at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an [ALJ] must have a sound reason for weighting portions of the same-source opinions differently")).

The administrative record in this case contains several treatment notes and opinions from Dr. Peck. On October 16, 2014, Dr. Peck saw Wheeler for evaluation and treatment of her right

knee. Tr. 580. In his treatment notes, Dr. Peck opined that Wheeler "can work with restrictions such as alternating sitting and standing[.]" Tr. 581. The ALJ's decision summarized Dr. Peck's treatment notes and opinions, including his opinion that Wheeler must be able to alternate between sitting and standing. Tr. 26 (citing Tr. 580-81). The ALJ afforded "significant weight" to Dr. Peck's assessments based on his "longitudinal treating relationship" with Wheeler and because his opinions are "supported by and consistent with the objective evidence of record and clinical findings on examination." Tr. 26. The ALJ further explained that "[a]s the treating physician who has had regular contact with [Wheeler], Dr. Peck is in the best position to assess the severity of [her] impairments and the limitations they impose." *Id.* The ALJ noted that Dr. Peck "repeatedly opined that, since [Wheeler's] surgery, [she] retained the ability to perform work-related activities, with restrictions that [are] commensurate with the [RFC] for a narrow range of light work." *Id.*

Despite the ALJ affording "significant weight" to Dr. Peck's opinions, the RFC assessment lacks any limitation related to alternating positions between sitting and standing. Tr. 24. The ALJ did not explain why this portion of Dr. Peck's opinion was unpersuasive, and the ALJ's reasoning on this issue is not apparent from any other part of his decision. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Although the ALJ elicited VE testimony at Wheeler's hearing regarding the jobs available if Wheeler needed to alternate positions for five minutes after one hour of standing, sitting, or walking, the RFC assessment did not incorporate any such limitation. Tr. 24, 46-47. Moreover, it is not apparent that allowing Wheeler to alternate positions for five minutes after one hour of

sitting, standing, or walking adequately accommodates her need to alternate between sitting and standing. It is unclear how the ALJ came up with this very specific limitation, as Dr. Peck only opined that Wheeler must be able to alternate between sitting and standing, which could have meant that she needs to be able to do so at will.

Although the Commissioner provides several reasons why she thinks Dr. Peck's opinion is unsupported by his objective findings and other record evidence, the ALJ's decision did not give any of these reasons for rejecting Dr. Peck's opinion that Wheeler must be able to alternate between sitting and standing. The Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted).

For the reasons stated, the Court finds that the ALJ erred when he afforded "significant weight" to Dr. Peck's assessments but failed to explain why he rejected Dr. Peck's opinion that Wheeler requires a job where she can alternate between sitting and standing. Accordingly, remand is required. *See Searles v. Astrue*, No. 09-CV-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) (remanding where "the ALJ failed to explain why he ignored portions of an opinion for which he granted 'significant weight.'").

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124

(2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: October 7, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court